**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| CHARLES E. ANDERSON, Trustee, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 11 C 3474 Magistrate Judge Arlander Keys |
| v. | ) ) | |
| SAVAGE DECORATING, INC., et al., | ) ) ) | |
| Defendants. | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

The plaintiffs in this case are the Painters' District
Council No. 30 Pension Fund (the "Pension Fund"); the Painters'
District Council No. 30 Health and Welfare Fund (the "Health &
Welfare Fund"); the Painters' and Allied Trades District Council
No. 30 Joint Apprenticeship and Training Fund (the
"Apprenticeship Fund");[1] the Northern Illinois Painting and
Drywall Institute ("NIPDI"); the Painters' District Council No.
30, International Union of Painters and Allied Trades, AFL-CIO
(the "Union"); Charles E. Anderson (fiduciary and Trustee of the
ERISA Funds); and Rick Vandegraft (fiduciary and Trustee of the
NIPDI).  On May 24, 2011, they sued, under the Employee
Retirement Income Security Act of 1974 ("ERISA"), to recover
unpaid and delinquent contributions and dues from Savage

---

[1]Together, the Pension Fund, the Health and Welfare Fund and
the Apprenticeship Fund are "the ERISA Funds."

Decorating, an Illinois company engaged in the business of construction painting. The plaintiffs filed a three-count complaint: Count I seeks damages from Savage under certain Collective Bargaining Agreements and Trust Agreements for unpaid contributions, dues and assessments; Count II seeks to hold Walter Glowicki (Savage's president) and Robert Allen (Savage's vice president) personally liable for the damages claimed in Count I based upon Savage's failure to provide and maintain a performance or surety bond during the relevant period;[2] and Count III seeks damages from Savage and Mr. Glowicki individually based upon a Promissory Note executed in 2010.

The parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to this Court on September 28, 2011. Thereafter, the plaintiffs filed a motion for summary judgment, which has now been fully briefed. For the reasons set forth below, the Court grants the motion with respect to Counts I and II (as to Mr. Glowicki), but denies the motion with respect to Count III.

<u>Facts & Procedural History</u>

The Pension, Health and Welfare and Apprenticeship Funds are all employee benefit trusts or plans within the meaning of ERISA,

---

[2]Although this count initially named both Mr. Glowicki and Mr. Allen, the plaintiffs now concede that Mr. Glowicki "is and has at all relevant times been "Savage's sole shareholder, and Savage's sole corporate officer." Plaintiffs' Rule 56.1 Statement, ¶12.

Section 3(3), 29 U.S.C. §1002(3); Charles Anderson is a fiduciary and trustee of those Funds. Plaintiffs' Rule 56.1 Statement, ¶¶4, 6. NIPDI is a multi-employer trust; Ricky Vandegraft is a fiduciary and trustee of NIPDI. *Id.*, ¶¶5, 7. The Union is a labor organization and an affiliate of the International Union of Painters and Allied Trades; it is entitled to collect dues, defense fund assessments and contributions on behalf of employees covered by one or more collective bargaining agreements (CBAs). *Id.*, ¶¶8-10. The CBAs require employers to pay contributions to the Funds for covered work performed by employees and to check off and remit dues and defense fund assessments to the Union for those employees on a monthly basis. Plaintiff's Rule 56.1 Statement, ¶14. The Funds are third-party beneficiaries of the CBAs executed by and between the Union and the individual employers, and they are primarily funded by contributions remitted by participating employers. *Id.*, ¶¶15, 16.

Savage Decorating, Inc. is an Illinois Corporation engaged in the commercial painting industry in northeastern Illinois; it is an employer within the meaning of the Labor Management Relations Act (LMRA) and ERISA. Plaintiffs' Rule 56.1 Statement, ¶11. Walter Glowicki is Savage's sole shareholder and sole corporate officer. *Id.*, ¶12. Since at least February 1993, Savage has been bound by the CBAs; most recently, Mr. Glowicki, on behalf of Savage, signed the 2008-2013 CBA on June 9, 2008,

and, in so doing, he agreed that Savage would be bound by the provisions of the Funds' Trust Agreements, as well as the rules and regulations promulgated by the Funds' Trustees under those Trust Agreements. *Id.*, ¶¶22, 23. Among other things, the Trust Agreements require Savage to pay continuing and prompt contributions to the Funds for work performed by covered employees. *Id.*, ¶24.

Additionally, the CBA requires the employer, before commencing work covered by the CBA, to provide a performance or surety bond sufficient to pay all the contributions, dues, assessments and wages owed under the CBA. Plaintiffs' Rule 56.1 Statement, ¶39. The CBA requires that the employer maintain the bond for the duration of the CBA plus six months after the CBA terminates, and that the bond be payable upon the Union's written demand. *Id.*, ¶41. The CBA further provides that, if an employer fails to satisfy the bond requirements spelled out in the CBA, the corporate officials authorized to execute agreements or sign checks for the employer shall be personally liable for the contributions, dues, assessments and wages owed under the CBA or the Trust Agreements. *Id.*, ¶42. The plaintiffs allege that Savage failed, since at least April 8, 2011, to maintain the required surety bond required under the CBA, thereby making Mr. Glowicki personally liable for the unpaid contributions, dues and assessments. *Id.*, ¶46. The defendants do not dispute any of

this, though they note that, by April 8, 2011, "Savage no longer had any Union employees covered by the CBA, since Savage ceased operating by January 1, 2011." Defendants' Response to Plaintiffs' Rule 56.1 Statement, ¶46.

With respect to the payments required under the CBA and the Trust Agreements, the Funds allege that Savage failed to remit contributions to the Funds and dues and assessments to the Union for employees performing covered work during the period from September 2009 through December 2009 in the amount of at least $44,959.85. *Id.*, ¶28. They further allege that Savage failed to remit contributions to the Funds and dues and assessments to the Union for employees performing covered work during the period from September 2010 through November 2010 in the amount of at least $13,209.26. *Id.* The plaintiffs acknowledge that Savage is entitled to credit for principal payments totaling $37,788.46 for these periods, leaving, according to the plaintiffs, a net delinquency of $20,380.65. *Id.*, ¶28. Savage does not dispute any of this. *See* Defendants' Response to Plaintiffs' Rule 56.1 Statement, ¶¶1-29.

The plaintiffs also allege that, during the months of September, October and November of 2010, Savage made no contribution payments and paid no dues or assessments; they further allege that Savage owes a total of $13,209.26 for this period. Plaintiffs' Rule 56.1 Statement, ¶34. Savage does not

dispute this.  Defendants' Rule 56.1 Statement, ¶34.

In addition to the CBA and the Trust Agreements, the plaintiffs are claiming damages under a Promissory Note.  In early 2010, Savage and Mr. Glowicki executed a Promissory Note, in which they agreed, jointly and severally, to pay to the Union, the Funds, and NIPDI, $45,726.66, plus interest at the annual rate of 9%; the Promissory Note set out a payment schedule requiring Savage to pay $3,969.10 per month from April 1, 2010 through March 1, 2011.  Plaintiffs' Rule 56.1 Statement, ¶¶30, 31; Plaintiffs' Exhibit 11.  Mr. Glowicki executed the Promissory Note on behalf of Savage on March 29, 2010 and signed it on behalf of himself as an individual on June 22, 2010.  Plaintiffs' Rule 56.1 Statement, ¶¶30, 31; Plaintiffs' Exhibit 11.

The defendants do not dispute that Mr. Glowicki and Savage executed the note.  But they contend that the note is otherwise invalid because it set an interest rate (9%) that violated the CBA and the Funds' Collection Policy and Procedures contained in the CBA.  Defendants' Rule 56.1 Statement, ¶¶30-31.  In either case, it is undisputed that Savage paid ten of the twelve payments required under the Note.  *See* Plaintiffs' Rule 56.1 Statement, ¶32; Defendants' Rule 56.1 Statement, ¶32.  The plaintiffs claim that the defendants owe, as of June 30, 2012, accrued interest in the amount of $1,075.19, $960.55 of which is attributable to the ERISA Funds.  Plaintiffs' Rule 56.1

6

Statement, ¶33.  The defendants dispute that they owe anything further under the Note and ask the Court to recalculate any obligation using "a permissible interest rate."  Defendants' Rule 56.1 Statement, ¶¶32, 33.

The plaintiffs allege that, in addition to the delinquent contributions, Savage is also on the hook, under the CBAs and Trust Agreements, for interest on the unpaid contributions (calculated at the rate of 1.5% per month), liquidated damages, and attorneys' fees and costs incurred in the collection of delinquent contributions.  Plaintiffs' Rule 56.1 Statement, ¶5. More specifically, the plaintiffs contend that they are entitled to recover from Savage: interest in the amount of $4,425.01 (calculated through the end of June 2012) and liquidated damages in the amount of $5,385.56 (as of June 30, 2012).  Plaintiffs' Rule 56.1 Statement, ¶¶36, 37, 38.  The defendants do not dispute that they are liable for these additional costs, but they do dispute the plaintiffs' liquidated damages calculation (which reflects the use of the 9% interest rate the defendants claim is invalid).  Defendants' Rule 56.1 Statement, ¶¶35–38.

Based upon this factual record, the plaintiffs moved for summary judgment on their complaint.  They argue that Savage unquestionably owes the delinquent contributions, dues and assessments, and, because the plaintiffs had to initiate this action to collect these sums, Savage unquestionably owes the

interest and penalties (including liquidated damages, attorneys'
fees and costs) provided for in the CBAs and the Trust
Agreements.

## Discussion

Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56©.  At this stage, the Court does not weigh evidence or
determine the truth of the matters asserted.  *Anderson v. Liberty
Lobby, Inc.,* 477 U.S. 242, 249 (1986).  The Court views all
evidence and draws all inferences in favor of the non-moving
party, and may enter summary judgment only if the record as a
whole establishes that no reasonable jury could find for the non-
moving party.  *Michas v. Health Cost Controls of Ill., Inc.,* 209
F.3d 687, 692 (7th Cir. 2000).

Under ERISA, "[e]very employer who is obligated to make
contributions to a multiemployer plan under the terms of the plan
or under the terms of a collectively bargained agreement shall,
to the extent not inconsistent with law, make such contributions
in accordance with the terms and conditions of such plan or
agreement."  29 U.S.C. §1145.  ERISA further provides that

> [i]n any action under this subchapter by a fiduciary
> for or on behalf of a plan to enforce section 1145 of

this title in which a judgment in favor of the plan is
awarded, the court shall award the plan –
(A) the unpaid contributions,
(B) interest on the unpaid contributions,
© an amount equal to the greater of–
    (I)  interest on the unpaid contributions, or
    (ii) liquidated damages provided for under the
         plan in an amount not in excess of 20 percent
         (or such higher percentage as may be
         permitted under Federal or State law) of the
         amount determined by the court under
         subparagraph (A),
(D)  reasonable attorney's fees and costs of the
     action, to be paid by the defendant, and
(E)  such other legal or equitable relief as the court
     deems appropriate.

29 U.S.C. §1132(g)(2).

The plaintiffs argue that they are entitled to summary
judgment because the undisputed facts establish that Savage was
contractually obligated to make contribution payments each month
for covered employees, and to pay dues and assessments each month
for covered employees, that Savage employed covered employees,
recognized its obligation to make the required payments, yet
failed to make all of the required payments.

To support their summary judgment motion, the plaintiffs
have offered evidence demonstrating that Mr. Glowicki signed the
CBA on behalf of Savage, and that he had the authority to bind
Savage to the terms of the CBA. *See* Defendants' Answer to
Plaintiff's First Set of Written Discovery, Answers to Requests
for Admission No. 1-4 (attached as Exhibit 6 to Plaintiffs' Rule
56.1 Statement).

They also submitted a declaration from Ryan Anderson, the

Director of Organizational Development for the Union, who is
charged with overseeing the reporting and collection of
contributions owed by employers to the Funds under the CBA.
Declaration of Ryan Anderson, ¶¶1, 8.  According to Mr. Anderson,
the CBAs require employers to make certain payments, for covered
employees doing covered work, to the ERISA Funds, as well as to
NIPDI, the Northern Illinois Painters and Allied Trades Labor
Management Cooperative Initiative ("LMCI"), and the Painters and
Allied Trades District Council 30 Labor-Management Industry
Development Fund ("LMIDF").  Anderson Dec., ¶10.  The CBAs
require signatory employers like Savage to pay contributions to
the Funds for all hours worked by employees from the Union's
geographic jurisdiction.  *Id.*, ¶11.  The CBAs also require
employers to withhold from the wages of each covered employee
dues to the Union and assessments for the Union's organizing and
defense fund; employers are required to remit those amounts on a
monthly basis as well.  *Id.*, ¶15.

    In his declaration, Mr. Anderson represents that he reviewed
the Union's files and the Funds' files pertaining to Savage and
determined that (1) Savage has been bound to the CBAs with the
Union since at least February of 1993; (2) Savage executed the
2008-2013 CBA on June 9, 2008; and (3) Savage made contributions
to the Funds and remittances to the Union at various times during
the term of the 2008-2013 CBA.  Anderson Dec., ¶¶19, 20.  Mr.

Anderson further represents that, although Savage submitted work history reports for covered employees who did work throughout 2009 and 2010, it failed to remit all of the corresponding contributions to the Funds and failed to remit the corresponding dues and assessments to the Union for those covered employees. *Id.*, ¶30.  In particular, Mr. Anderson represents, during the period from September 2009 through December 2009, Savage reported, but failed to remit, contributions, dues and assessments in the amount of $44,959.85.  *Id.*, ¶31.  Mr. Anderson further represents that, during the period from September 2012 through November 2010, Savage reported, but failed to remit, contributions, dues and assessments totaling $13,209.26.  *Id.*, ¶39.

According to Mr. Anderson, in addition to these missing payments, the CBAs and the Trust Agreements authorize the Trustees to assess and collect interest at the rate of 1.5% per month, liquidated damages, and attorneys' fees and costs incurred in the collection of delinquent contributions.  Anderson Dec., ¶28.  Consistent with the CBAs and the Trust Agreements, interest is assessed on unpaid delinquencies at the rate of 1.5% per month, which would result in Savage owing $4,539.04 in interest through the end of June 2012.  *Id.*, ¶40.  Mr. Anderson further represents that: (1) the CBAs and the Trust Agreements also allow the Funds to assess the greater of interest or liquidated damages

of 20% of the delinquent contributions to the ERISA Funds; and (2) with respect to Savage, the total interest is $5,385.56 (1,075.19 for the 2009 contributions + 4,425.01 for the 2010 contributions), and the total delinquent contributions is $18,983.02 ($7,091.79 in 2009 + $11,891.23 in 2010), 20% of which would be $3,796.60. *Id.*, ¶41. Thus, Anderson declares, the Funds are entitled to recover an additional $5,385.56 from Savage. *Id.*

The plaintiffs also submitted a declaration from Ricky Vandegraft, a NIPDI trustee; in it, he represents that, during the years 2009 and 2010, Savage reported some employee work history and paid corresponding contributions. Vandegraft Declaration, ¶16. He further represents that, during the period from September 2009 through December 2009, Savage reported on covered employees' work, but failed to remit the corresponding contributions; the total deficit, he states, is $1,566.56. *Id.*, ¶17. Mr. Vandegraft also represents that, during the months of September, October and November, 2010, "Savage paid no contributions to the Fund for covered work performed by its employees." *Id.*, ¶18. He further represents that Savage reported the hours worked in September, but failed to remit contributions, and that, for the months of October and November Savage neither reported covered work nor paid contributions for covered employees. *Id.*

In response to the motion, the defendants have argued that

12

the Funds' damages calculation includes interest calculated at a rate of 9% and that this rate is also reflected in the promissory note referenced in the complaint. They argue that this rate is inappropriate and not permitted under the CBA. In their Statement of Additional Undisputed Facts, the defendants note that, under the CBA, interest on the total amount owed "will be calculated at the current primate rate, as reported by the Wall Street Journal, plus two percentage points." Defendants' Statement, ¶54. The relevant rate, they argue, is 5.25% (prime, which has been 3.25% since December 16, 2008, plus 2). *Id.*, ¶56-57. The defendants also argue that Mr. Glowicki signed the Promissory Note under duress.

A.    Counts I and II

Based upon the evidence before it, the Court finds that the plaintiffs are entitled to judgment as a matter of law on Counts I and II of their complaint. There is no question that Savage agreed to be bound by the CBAs and the Trust Agreements; there is no question that Savage failed to make the requisite contributions, dues and assessment payments; there is no question that Savage owes what the plaintiffs say it owes in terms of contributions, dues and assessments; and there is no question that Savage failed to maintain a bond as required by the CBA.

None of the defenses and arguments raised by Savage goes to the question of whether Savage is liable for the unpaid

contributions, dues and assessments. Indeed, Savage admits that
it owes the unpaid contributions, dues and assessments. In
discovery responses, Savage admitted that "the net total
delinquency to the Funds and Union is $20,380.65 as listed in
Paragraph 18 of the Complaint." Defendants' Answer to
Plaintiff's First Set of Written Discovery, Interrogatory No. 4
(attached to Plaintiffs' Rule 56.1 Statement as Exhibit 6).
Savage also conceded that the "unpaid balance on the Note is
$7,938.20 as listed in Paragraph 30 of the Complaint." *Id.*,
Answer to Interrogatory No. 5. Accordingly, the Court finds that
the Funds are entitled to judgment against the company for those
amounts. Savage admits that it was a signatory to the agreements
requiring contribution payments to be made in a specified manner,
and its failure to make such payments in accordance with the
agreements gives rise to the litany of penalties provided
therein; thus, in addition to the contribution payments, Savage
is on the hook for interest and liquidated damages, calculated as
provided in the agreements, as well as for attorneys' fees and
costs.

    B.   <u>Count III</u>

    In Count III, the plaintiffs seek an award of damages
against Savage and Mr. Glowicki based upon a promissory note Mr.
Glowicki signed, both on behalf of Savage and in his capacity as
an individual, in 2010. The plaintiffs argue that they are

entitled to judgment as a matter of law in the amount of the unpaid balance on the note, plus interest and penalties, as provided in the note. The defendants have argued that the note is invalid because Mr. Glowicki signed it under duress and because it includes an interest rate provision that violates the CBA.

The Court rejects the defendants' duress argument. In its Statement of Facts, Savage represents that Mr. Glowicki "signed the Note, in his personal capacity, under duress." Defendants Statement, ¶59. This representation is supported with an affidavit from Mr. Glowicki, which simply reiterates that he was "under duress at the time he signed the Promissory Note in his personal capacity." *See* Affidavit of Walter Glowicki,¶3. The "duress" is presumably established by the remainder of the affidavit, in which Mr. Glowicki states that "he had neither the assistance of counsel nor adequate time to consider the proposed contractual terms prior to signing the Note, and was not given sufficient time to assess his options"; and that "given the threat to his business and livelihood, he was pressured into signing the Note . . . and would not have signed the Promissory Note, in his personal capacity, were it not for duress imposed upon him by Plaintiffs." Glowicki Affidavit, ¶¶4-5.

The plaintiffs dispute that Mr. Glowicki was under duress when he signed the Promissory Note; they argue that Mr. Glowicki

15

may have been required to appear before the joint labor-management board, but that that was something he was contractually obligated to do; ditto having to pay what was required or risk losing his rights with respect to the unions.

At his deposition, Mr. Glowicki clarified that, on or about the date he signed the agreement, he appeared before the board of trustees of the District Council 30; he testified that he was asked to come before the board because Savage was late paying union contributions. Deposition of Walter Glowicki, p. 20 (attached to Plaintiffs' Rule 56.1 Statement as Exhibit 12). He testified that, at that time, he was told that he had to either "pay the full amount due" or "sign this note and guarantee it personally or else the company would cease to be able to do business." Glowicki Dep., p. 21. Mr. Glowicki testified that he believed it was Chuck Anderson who told him this. *Id.* He testified that he was forced to sign the note under "extreme duress." *Id.*, pp. 19, 24. He explained: "I mean they put me in a room with 25 people, basically said sign the note individually or we're going to shut you down." *Id.*, p. 19. He also testified, however, that he was free to leave the meeting; he testified that he was "sitting in front of an intimidating group of people basically telling me sign this or your company goes away." *Id.*, p. 24. He explained that the group was "intimidating" because "everybody sitting around in the room

16

staring at you, saying that you have to sign personally or your company will no longer be able to operate." *Id.*, pp. 24-25.

"Duress" in the legal sense – the duress necessary to vitiate one's consent to be bound by a contract – is not the same as "pressure." To establish duress, Mr. Glowicki would have to show that he was "induced by a wrongful act or threat of another to make a contract under circumstances which deprive him of the exercise of his free will." *E.g., Kaplan v. Kaplan*, 25 Ill.2d 181, 182 N.E.2d 706, 709 (1962); *Curran v. Kwon*, 153 F.3d 481, 489 (7th Cir. 1998). Mr. Glowicki's affidavit, especially when read along side his deposition testimony, falls far short of what would be necessary to create an issue of fact as to the validity of his execution of the CBA or the promissory note. First, even if his testimony is fully credited and the Court accepts that Mr. Anderson and his cohorts were threatening to put Savage out of business if he declined to sign the note, there is no evidence to suggest that this threat was "wrongful" – indeed, given that Savage had failed to make the requisite payments under the CBA, the union and Mr. Anderson may very well have been within their rights to take the threatened action. Additionally, Mr. Glowicki admitted at his deposition that he was free to leave the meeting without offering his personal guarantee.

Turning to the interest rate issue, as explained, Savage and Mr. Glowicki argue that the promissory note's inclusion of a 9%

17

interest rate was contrary to the Collection Policy and

Procedures spelled out in the 2008-2013 CBA.  The plaintiffs

dispute the defendants' claim that the 9% interest rate violated

the CBAs.  They concede that the Funds' collection policy

provided that interest would be assessed at the current prime

rate, plus two percentage points.  But they dispute that this

provision was "binding" on the Funds as a matter of contract

against the defendants.  Plaintiffs' Response to Defendants' Rule

56.1(b)(3)(c) Statement, ¶¶54, 55. They do not explain their

position; nor do they point to a particular provision of any

agreement that would support their contention.

　　　The CBA specifically provides that

> [i]f extenuating circumstances are present, the
> Delinquency Committee may permit, in its sole
> discretion, a Contributing Employer to enter into a
> promissory note with the Entities.  The promissory note
> shall not exceed twelve (12) months in duration, and
> interest on the total amount owed will be calculated at
> the current prime rate, as reported by the Wall Street
> Journal on the first business day of the month, plus
> two (2) percentage points.

Painters District Council No. 30 Funds Collection Policy and

Procedures, Section 8 (CBA for Painters District Council 30,

effective May 1, 2008-April 30, 2012, p. 69)(attached as Exhibit

5 to Plaintiffs' Rule 56.1 Statement).

　　　In response to this argument, the plaintiffs submitted a

supplemental declaration from Ryan Anderson, in which he

represents that the provision quoted above is not really part of

18

the CBA and is not incorporated by reference into the CBA; rather, it is simply included in the same package as the CBA "as a courtesy" to signatory employers; he represents that the Trustees of the respective Funds can, essentially, choose whether or not they want to adhere to these policies. *See* Supplemental Declaration of Ryan Anderson, ¶¶4-5. He further represents that, in Savage's case, the Funds' Trustees decided to go with a higher rate "perceived credit risk and because Savage was unable to offer security for the promissory note beyond the personal guarantee of Walter Glowicki." *Id.*, ¶6. He also notes that the Union made a claim on Savage's surety bond in February 2011, but the claim was refused because Savage disputed that it owed the Funds money. *Id.*, ¶7. This last point can hardly justify the inclusion of the higher rate though; Mr. Glowicki signed the note on June 22, 2010, eight months before the Union even made its claim on the bond. Mr. Anderson failed to cite any particular provision of the CBA or the Trust Agreements that would support his representations concerning the binding nature of the collection policy. The plaintiffs cannot simply choose to enforce certain provisions of the CBA and ignore others. Based upon the documentary evidence, the Court is persuaded that issues of fact remain concerning the validity of the interest provision in the promissory note – and, in turn, potentially, the validity of the entire agreement.

The plaintiffs have argued that the defendants' argument about the interest rate is an affirmative defense which should have been raised in their responsive pleading; because the defendants did not raise it, the plaintiffs argue, they've waived it. Savage answered the complaint, denying or declining to answer the bulk of the allegations based upon a lack of knowledge or information; Savage asserted just one affirmative defense, alleging that the claim against Walter Glowicki individually "is barred as no consideration was provided for Glowicki's personal guarantee." *See* Answer, Affirmative Defense, ¶1 (attached as Exhibit 2 to Plaintiffs' Rule 56.1 Statement). This is arguably enough to at least preserve the "duress" defense, though, as explained above, the defense is untenable on its merits. This defense clearly says nothing about the interest rate or its impact on the validity of the promissory note.

If a party fails to plead in its answer any of the affirmative defenses listed in Rule 8(c), those defenses are deemed waived. *E.g., Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir. 1990). But the issues raised here are not included in that list. The Seventh Circuit has instructed that, when deciding whether a particular defense not listed in Rule 8(c) is an "affirmative defense," courts should consider whether the defendant bears the burden of proof on the issue or whether it controverts the plaintiff's proof. *Winforge, Inc. v. Coachmen*

*Industries, Inc.*, 691 F.3d 856, (7th Cir. 2012)(citing *Brunswick Leasing Corp. v. Wisconsin Central, Ltd.*, 136 F.3d 521, 530 (7th Cir. 1998)). In *Winforge*, the court held that, under either approach, contesting the validity of the contract in a breach of contract action is not an affirmative defense because the existence of a valid contract is an issue on which the plaintiff bears the burden of proof; the defendants are not required to prove that the contract was invalid. *See Winforge*, 691 F.3d at 530. The same is true here; the defendants are really challenging the validity of the promissory note, based upon the inclusion by the Trustees of an interest provision that violates the CBA. Accordingly, the Court is not willing to dispose of the matter on the basis of waiver of the argument.

In sum, although the Court will not at this time enter judgment as to the promissory note, the Court finds that Savage is liable to the plaintiffs for delinquent contributions, dues and assessments owed under the relevant Collective Bargaining and Trust Agreements. More specifically, the Court finds that Savage is liable to the plaintiffs for unpaid contributions, dues and assessments totaling $20,380.65, plus interest on that amount calculated at the rate of 1.5% per month, and liquidated damages as provided in the Agreements. Savage is also liable, under the CBA and the Trust Agreements, for reasonable attorneys' fees and costs incurred in pursuing these delinquent contributions.

Additionally, given that Savage failed to provide a performance or surety bond as required under the CBA, Mr. Glowicki is personally liable for Savage's unpaid contributions as well.

## Conclusion

For the reasons set forth above, the Court grants in part and denies in part the plaintiffs' motion for summary judgment [Docket #34]. The motion is granted as to Counts I and II, but denied as to Count III. The case is set for a status hearing on April 15, 2013 at 9:00 a.m.

Date: March 22, 2013

E N T E R E D:

_____
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT